Our next case for argument this morning is United States v. Derrick Davis. Ms. Judge, whenever you're ready. Mary Judge Good morning, Your Honors. May it please the court. My name is Mary Judge. I'm with the Chicago Federal Defender Program, and I'm here on behalf of Mr. Derrick Davis. Mr. Davis's appeal addresses two concerns relating to a 21-month upward variance that he received at his sentencing hearing. The first concern is whether the court made insufficient and or inconsistent factual findings regarding whether Mr. Davis engaged in a shootout prior to his arrest. The second concerns whether the government failed to establish by a preponderance of the evidence that on June 15, 2019, the day of the arrest, Mr. Davis was an active shooter just before his arrest. In the beginning of the sentencing hearing, as many courts do, the court accepted explicitly and wholly the pre-sentence report and its factual basis, including the pre-sentence report's determination that a guideline enhancement under 2K2.1 for participating in a shootout should not be The court then imposed its sentence based on a contrary finding that Mr. Davis did participate in a shootout. But evidence that is insufficient to satisfy the 2K2.1 guideline enhancement for participating for possessing a firearm and committing another felony offense in concert cannot be cured by viewing the exact same conduct, which was participation in a shootout under the uncharged conduct, insufficient evidence as uncharged conduct under 3553A. And what happened here is just that. The standards for the enhancement under the guidelines is the exact same as a standard for enhancing a sentence, imposing a variance sentence upward under the statutory sentencing regime. And that standard is preponderance of the evidence. When the pre-sentence report came out, the government did not challenge any of the facts in the pre-sentence report and did not file written objections to the guideline calculations in the pre-sentence report, agreeing with probation that a 2K2.1 enhancement for possessing a firearm in connection with another felony offense did not apply due to lack of evidence. The court's reliance on insufficient evidence of uncharged conduct renders the sentence procedurally unreasonable. The clearly erroneous standard, the clearly erroneous test allows the court to choose between conflicting readings of the evidence, but that's not what we have here. Ms. Judge, isn't the test under 2K2.1B6B that the PSR addressed and found the evidence insufficient, isn't that really a different factual question than 3553A factors? Yes, Judge. So then why would it be inconsistent if the court adopted and said, well, there's not enough to find that he possessed a firearm in connection with another felony where you have to make multiple findings there, but under history and characteristics of the defendant, this is a relevant 3553A factor, that he went with a loaded firearm to a place where shooting was taking place? It seems like there are different factual determinations, and so there wouldn't be an inconsistency. Well, I think all the case law that I review that has to do with 2K2.1 or felons in possession of firearm cases where a firearm is discharged, all the situations where that came up is in the context of, does the person get the four-level enhancement or not? That's determined first, because the offense of discharging the firearm, as this court said I believe even this week in a case, if an individual shoots a firearm and while they're in unlawful possession of it, it's a no-brainer that that enhancement applies. But the court didn't find that he shot the firearm. The court didn't make that specific factual finding here. It said he went to the shootout with a loaded firearm, but the district court didn't say, and he shot the firearm. I think the district court, the inconsistency is agreeing that there's insufficient evidence to establish that he participated in a shootout on the one hand, but then what the judge does is refer to the shootout as evidence of my client's violent nature and the fact that he participated in this conduct, which is the exact same, participating in a shootout. I don't really see that the facts were different. I think the judge was fully relying on my client's... that Mr. Davis was driving around in the city and was discharging his firearm and that's why he made this ruling. So the basis... I didn't see anything, and please correct me if I'm wrong, but I didn't see anything in the court statements that he thought he was actually discharging the firearm at the time. So, a lot of what you've argued today is firing of it, but... Well, if you consider the criminal conduct that the judge is referring to, he relies on uncharged conduct, whether it really doesn't matter whether it comes down to discharging the firearm or not. If he's looking at uncharged conduct or he's looking at conduct that's unlawful and should be considered because it's a felony offense under the guidelines, it's the same standard. If he says there's uncharged criminal conduct, how is that different than Mr. Davis being responsible for committing an offense while in possession of that firearm? And then the whole discussion is about the driving around and having the shootout occurred and my client participating in it. You are disputing, are you, that the call the court relied on is your client's voice? I am not. It didn't seem like you were disputing the words said on the call either, is that fair? Other than it's hard to discern them. It's very hard. They spoke very quickly. I think had the government raised this in the context with objections, we would have fleshed out this issue much more so than we did in this case. It was like, here's the recording, but we didn't have a transcript of the recording. We didn't have a witness talking about what their interpretation was. It was the government's assertion of what they thought that it meant. So I think it is very insufficient for the judge to go from that recording only, and that's really all we have, to an assertion that my client participated in uncharged criminal conduct and that he deserved an upward departure on that basis or an upward variance on that basis. Especially when the same conduct is under consideration under the guidelines, the exact same conduct, and it's rejected by the judge first. The jail call is a single call that we have that Mr. Davis made while he was in state custody at some point in time early in his 2019 arrest. It's describing an event that we don't know is the same day of his arrest. He doesn't talk about participating in a shootout. He talks about the neighborhood that he lives in, but we don't know the context or the contour of the call, and the judge seemed to be very interested in saying that he described things that he did on that day, but there is zero in the call and zero evidence in the record to tell us that he's talking about that day. Why wouldn't that just be circumstantial evidence, given what we know did happen, that he was at a location where he was being shot at, they have the bullets in the car, and he ducks to avoid getting shot and he runs into another car. Why wouldn't that just be circumstantial? It could be circumstantial evidence, but the flip side of that is he didn't address the evidence that I brought up, which is there were no shell casings in the car and there was no evidence that law enforcement saw him using a firearm or participating in this shootout or there's no evidence that the firearm was recently discharged when the officers collected the firearm immediately after the crash. So I think there's inconsistent evidence as well. But that goes back to the fact that I don't think the court found he actually shot his own gun. I see my time is up. Thank you. Mr. Rojas. Thank you. Thank you, Chief Judge Sykes. May it please the Court. My name is David Rojas, and I represent the United States. The District Court's sentence here was procedurally sound. The District Court considered all of the evidence presented and reached a reasonable, factual finding that was sufficiently supported by the evidence. And what exactly was that factual finding? There seems to be a little dispute about that. Yes, Chief Judge, the District Court, I believe, stated that the defendant participated in a shootout intentionally and volitionally, I believe were some of the words that the District Court used. I do think that's it. I think that's what you said, but I'm not sure that's what the District Court said. Yes, Judge. I mean, the judge does, in the end, adopt the government's interpretation of the call. So maybe that implicitly includes the argument that you were making that the defendant participated in the shootout. Yes, Judge. I do think that's part of it, the fact that the District Court did agree with the government's interpretation. But in addition, on page 25 of the transcript, A33, the District Court did state that the defendant engaged in a shootout in possession of a gun he had no right to possess while he was on parole. Okay. That's later in the transcript, after he moved on from the actual discussion of this? Yes, Judge. Earlier in the transcript, on page 20 of the transcript, and A28, the District Court does say that the language he uses leaves little room for mistake, that he was referring to something he did intentionally and violently on that day, which is certainly less clear than the District Court's later statement in the context of the other factors the District Court was considering. And isn't there tension between that finding and accepting the PSR's non-finding on the enhancement, the guidelines enhancement about use of the firearm in connection with another felony? Yes, Chief Judge. I would agree that there's tension, but not inconsistency. Ultimately, the finding by probation was specific to the particular four-level enhancement that's been under discussion. And it was never the government's intention to request that the four-level enhancement be applied. The District Court didn't even consider the four-level enhancement. And ultimately, that enhancement would have required a specific finding that a felony offense would have been committed by the defendant. And intentionally going to a shootout with a loaded firearm, it's unclear whether that would be a felony offense under Illinois law. We're trying to get at least some consensus on what the actual finding is that the judge made with respect to justifying this above-guidelines sentence. And if we're agreed that he made a factual finding that the defendant participated in the shooting, then that would be a felony offense, right? And so there's an inconsistency with the non-finding on the enhancement and the finding for purposes of an upward variance? Judge, I would say that the combination of the District Court agreeing with the government's position, as well as the quotations I have from the transcript, do lead me to the conclusion that the District Court found that the defendant intentionally went to a shootout. I think the record is silent as to whether that's a violation of a felony offense. Well, yeah, we know that that finding for purposes of the enhancement wasn't made, that it was a felony offense. But if the judge did make a finding at your request that the defendant participated in a shootout, in other words, fired his gun, how is that not inconsistent with the non-finding on the enhancement? As a factual matter, I mean, it's clear the judge could decline to give the enhancement for other reasons and consider the offense conduct for purposes of an above-guidelines sentence. Those are two different inquiries. But as a factual matter, isn't there some inconsistency here? Yes, Chief Judge, I do believe that there is tension. In the PSR, probation did state that there was a lack of evidence, including not knowing who the individuals participating in the shootout were. I do not think that the District Court's finding that the defendant was involved in a shootout is inconsistent with that. Ultimately, probation would have had to make, to be able to make a finding, I guess a legal finding, that there was a felony offense that the defendant used the firearm in connection with. Ultimately, I think that there would be more needed by probation and the District Court than just him intentionally going to a place where a shootout was happening with a loaded firearm. So did the court make, in your view, make a factual finding that he shot his firearm at the shootout? Your Honor, I do believe that the transcript is unclear whether the District Court went beyond intending to go to the shootout with a loaded firearm in order to discharge it as opposed to the defendant actually discharged it at the unknown assailants. I do think that the record is unclear whether the District Court took that extra step. But I do think that the District Court at least made the factual finding that the defendant went to the location of the shootout with a loaded firearm with the intention of participating. Do you agree that without that factual finding there wouldn't be enough in the record for an upward departure? I apologize, Your Honor, I don't understand. If the court did not make a specific factual finding relying on the call about him going and participating in a shootout, is the record sufficient without that for an upward departure? I don't believe so, Your Honor. I believe the jail call is an essential component of the factual finding. Ultimately, the District Court found that the government met its burden of proving by preponderance of the evidence that the defendant participated in a shootout. And at the time of the offense, the defendant was driving, armed with a loaded firearm, which he said he had for his protection. Unknown assailants fired shots, hitting the defendant's vehicle, including his front and rear windows. The defendant ducked down and crashed into another car and tried to hide his firearm. But an unidentified observer saw him with it, leading to his arrest and the recovery of the firearm. So it was within all of that context that the District Court stated that it reviewed the entirety of one of the defendant's jail calls and reasonably inferred that the defendant was describing a situation that he was actively participating in. And listening to the call, one can reasonably interpret that the defendant was animatedly and quickly explaining, almost bragging about something he affirmatively did. The other caller asked if the defendant had been seeing red, in other words, angry. The defendant responded that nothing could stop him, how he ran the stop sign and the red light, and how he showed the other drivers his blinker so they knew what he was doing. The defendant said this all took place over the course of five minutes. In other words, not just a few seconds, like an unexpected shooting might. The District Court reasonably inferred that the defendant wasn't describing himself as a random, sudden victim, but rather an active participant. And in support of that, the District Court considered that the defendant stated that he knew he was going to jail, that he recounted the path that he took, which included Fillmore, a street that he was arrested near. And finally, the defendant made a noise that the District Court reasonably interpreted was mimicked gunfire. The District Court thoroughly explained its interpretation of the call and the evidence based on its review of the entire record, and ultimately that the defendant was describing something that it was his involvement in events that led to his arrest. So even if ultimately a different fact finder might have reasonably reached a different conclusion, the District Court here had a permissible view of the evidence. The District Court's finding was not based on clearly erroneous facts. For these reasons, the District Court's 84-month sentence was procedurally sound. Unless the Court has any further questions, I'll end by asking you to affirm the defendant's sentence. Thank you. Ms. Judge, your time had expired, but if you have something further, you may have an additional minute of rebuttal. If the government is allowed to prepare a plea agreement without an enhancement and argue with sentencing for information that could have been part of an upward variance or enhancement under the guidelines, it's somehow doing an end run around the law. In a way, we have Mr. Davis saying, yes, I possessed a firearm. Yes, I tried to hide the firearm when the police arrived. I'm pleading guilty to that. I have pretty bad criminal history. I'm looking at a lot of time. And then to have this information sort of shoehorned in inappropriately. It did not come in the proper way through the guidelines as it should have. Is part of your argument, Ms. Judge, what I'm hearing that you weren't adequately prepared to address this because given the guideline issue and no objection to it that you didn't think this information was going to come in for an upward departure? No, because I agreed with the pre-sentence investigation report, I didn't file objections to that. So I didn't expect there to be objectionable discussions at the sentencing hearing. And I certainly didn't expect my interpretation of the inconsistent way that the material was dealt with at the hearing. It's clear that the judge found that my client discharged the firearm. I think he mentions this several times when I was sitting down and went through the transcripts and talked about his violent conduct. So he definitely considered it, and I think it's very easy to say that there's numerous Illinois violations that we could suggest were violated if someone is discharging a firearm at another individual or at a car that he knows where individuals are in custody. I think it's disingenuous for the government to say there's not enough evidence to suggest that there is another felony offense that they could have considered. Thank you very much. All right. Thank you. And our thanks to all counsel. The case is taken under advisement.